On March 7, 1893, the General Assembly of Ohio passed a new charter law for the government of Columbus, by the terms of which the board of public works, with which the relator had made said contract, was legislated out of existence, and a new board of public works was created and certain duties in regard to the appointment of the members of said board were devolved upon the mayor of said city who was elected at the April election, 1893. Said mayor refused to perform said duties and a suit in mandamus was instituted against him in the Supreme Court on April 22, 1893, which was decided June 6, 1893, when said court held said act of March 7, 1893, to be constitutional and awarded a writ of mandamus to issue to said mayor, commanding him to perform the duties imposed upon him by said act. It then became necessary to carry out said new charter law, to-do which, action was necessary on the part of the city council,‘and it was not until August 1, 1893, that said city government was fully organized and equipped for carrying out the provisions of said act.- In the meantime, during the pendéncy of said proceedings, the relator continued to carry out his contract.
On June 19, 1893, the city council, by resolution duly passed, resolved “That all the public printing, pertaining to the city council, such as ordinances, resolutions, etc., be given by the clerk to the newspaper which had the contract for printing on March 7, 1893, at the price then existing under said contract, until council make a contract for its own printing.” That up to August 1, 1893, said city council passed no ordinance or resolution regarding the publication of resolutions or ordinances, except the said resolution of June 19, 1893.
On October 16, 1893, said city council passed an ordinance No. 7934 by which it “authorized and directed the director of accounts to pay relator’s bill of three hundred and forty-six and eighty-eight one-hundredths dollars ($346.88). This ordinance is signed by the president of the city council, and attested by the *519 city clerk and approved by the committee on printing and stationery. There was more than sufficient money in said fund to pay said sum, but the defendant and his successors in office, have refused to draw a warrant upon said fund for said sum, though often requested by the relator so to do.
The second cause of action stated in the second amended petition is but a statement of the same cause of action set forth in the first cause of action — it omits some of the allegations of the first statement. The right of the relator to relief if any such right exists rests upon th,e allegations of the first cause of action which alone will be here considered.
The acceptance by the board of public works, on January 13, 1893, of relator’s bid for city advertising, upon the condition that the board might terminate the agreement at any time, and that the same was 'hot to continue beyond May 1, 1893, unless further ordered by the board, made the contract between the city and the relator, and under this contract the latter continued to do the advertising from January 7, 1893, till August 1, 1893, and was paid therefor till June 1, 1893, but has not been paid for July and August — these two months were “beyond May 1, that is beyond the limit for which the agreement was made.. This agreement was never legally extended and hence the advertising done by relator in July and August was tíot done under or in pérformance of any agreement. The said resolution of the city council of June 19, 1893, “That all printing pertaining to city council, such as ordinances, resolutions, etc., be given by the clerk to the newspaper which had the contract for printing on March 7, 1893, at the price then existing under said contract, until the council makes a contract for its own printing,” did not authorize the clerk to give out the printing in the manner stated in the resolution. This was not the mode of contracting that was authorized. Section 63 of the charter law provides that all contracts shall be in writing, signed and executed in the name of the city by the head of the appropriate department, and approved by the board of public works, by ^ yea and nay vote before they are binding upon the city. It does not appear from the petition that this section was complied with. It therefore does not appear from the allegations *520 of the second amended petition that the relator.had any valid, agreement for advertising during the months of July and August (The City of Wellston v. Morgan, 65 O. S., 219).
The city council, however, on October 16, 1893, passed said ordinance No. 7934 and thereby appropriated three hundred and forty-six and eighty-eight one-hundreths dollars ($346.88) to pay said claim and directed said director of accounts to pay it, and it is insisted by relator’s counsel that said ordinance gives validity to relator’s claim, and entitles him to have the same paid, and they rely upon the State, ex rel, v. Brown, Auditor, 8 C. C., 103, as supporting their contention. In that case, it was held:
“Where equity and justice require the payment of a claim against a municipal corporation, though it may not be collectible ■at law, an ordinance of such city or village legally passed, directing and authorizing its payment, is legal and valid.”
This holding is reasonable and just, and is sustained by numerous adjudications. The allowance of such claims belongs to the power of taxation, which is embraced in the legislative power of the state, which the Legislature may delegate to municipal corporations.
“The Legislature,” says Judge Cooley, “may recognize moral or equitable obligations, such as a just man would be likely to recognize in his own affairs, whether by law required to do so or not. And what the Legislature may do for the State, the municipalities, under proper legislation may do for themselves” (Cooley on Taxation [2d. Ed.], p. 128). The Legislature has no constitutional power to authorize the payment of a void claim, and, of course, a municipality can have no such power; but the Legislature may authorize the payment of claims just in themselves, and for which an equivalent has been received, but which from some cause, can not be enforced at law (20 A. & Eng. Ency. of Law [2d. Ed.], 1222 and 1223). And this doctrine has been repeatedly sanctioned by the Supreme Court of this state (Board of Education v. McLandborough, 36 O. S., 227; Warder v. Commissioners, 38 O. S., 639, 643; Board of Education v. State, 51 O. S., 531 and 541). While the city *521 council may make inquiry to ascertain, in the first instance, the truth of the facts necessary to authorize the allowance of the claim, yet the city council is without authority to conclusively find and recite such facts so as to estop the municipality from contesting them in a court of justice where the ordinance is sought to be enforced (Board of Education v. State, 51 O. S., 531, Syl. 2).
F. A. Davis and Gilbert M. Stewart, for plaintiff.
Byrne, Rubrecht <& Wildermuth, City Solicitors, for defendant.
In Ranck et al v. County Auditor, this court in 1898 awarded a writ of mandamus against the defendant, to compel him to issue to the plaintiffs, who were the persons for whose relief the act of April 21, 1898, was passed (O. L., Vol. 93, p. 586), his order therefor on the country treasury as provided in said act. This judgment was affirmed by the circuit court.
The allegations of the second amended petition are such as to show that the claim of the relator is equitable and just and in good conscience should be paid — that the advertising was necessary, and that the city received the benefit thereof. The said petition also sets out said ordinance of October 16, 1893, allowing said claim as a valid claim against the city, and making an appropriation of funds for the payment thereof and authorizing and directing the defendant to pay the same.
The allegations of the first cause of action of said petition, the truth of which is admitte'd by the demurrer, in the judgment of the court are sufficient to entitle the relator to the relief prayed for.
Demurrer overruled.